UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

|  |  |  |
|---|---|---|
| CALIFORNIA INNOVATIONS, INC. | ) ) ) | Civil Action No. 1:22-cv-01986-RM-NRN |
| *Plaintiff/Counter-Defendant*, | ) ) |  |
| v. | ) ) |  |
| ICE ROVER, INC. | ) ) ) |  |
| *Defendant/Counter-Claimant* | ) ) |  |

**COUNSEL'S RESPONSE TO DE#61
AS ORDERED BY THE COURT IN DE#65
ADDRESSING THE ASSERTIONS MADE IN
MR. RAMEY'S RESPONSE TO SHOW CAUSE**

Counsel of record provides the below reply to Mr. Ramey's Response to the Show Cause ORDER. Attached hereto is the declaration of Mr. Zito (Exhibit 1) as required by Dkt#65, addressing the assertions made in Mr. Ramey's Declaration Dkt#61-1. Additional assertions included in Mr. Ramey's response to the Show Cause Order, is addressed herein.

This response is made on behalf of non-parties AiPi LLC and The Whitestone Law Firm. The Whitestone Law Firm was not formerly known as AiPi. AiPi and The Whitestone Law firm are two separate entities, both of which continue to exist.

AiPi, LLC was formed in January of 2016 as a company that provides business consulting and support services to businesses and law firms. In August of 2021, AiPi began arranging for financing of law suits by matching investors with patent owners. AiPi is not a law firm and does not provide legal representation in court. AiPi assists in the selection of counsel for its clients, including trademark and patent prosecution counsel and litigation counsel. By September of 2021, there were around 20 cases being handled by counsel that had been engaged

-1-

by clients of AiPi. In October of 2021, one of the counsel informed AiPi and the clients, that he had to withdraw from all cases due to a conflict. In October of 2021, AiPi engaged the services of Mr. Ramey to be lead counsel for a number of companies funded through AiPi arrangements. Other cases continued on with other counsel. Mr. Ramey entered into an agreement to be paid by funders and also was engaged directly by each patent owner (the Plaintiff), including Ice Rover, as lead counsel with full decision making authority. AiPi provided support services in the form of patent evaluations, claim charting, brief drafting, discovery support and the like. All materials were reviewed by the Ramey Firm and by Mr. Ramey before Mr. Ramey made the final decisions to file. See Ramey Declaration Dkt #61-7 at paragraphs 3 and 7, (attached to the Ramey Declaration Dkt#61-1):

> "3. In addition to reliance on my highly competent staff and the other attorneys at the Ramey LLP firm, I also used resources including litigation support services from AiPi, including Eric Morehouse and Erik Lund. I am confident in the support I receive and received from AiPi because these individuals are experienced patent professionals."

and at paragraph 7:

> "7. From September 7, 20022, until the case was filed on September 16, 2022, I worked on these matters with my staff and the staff at AiPi. Then, after I reached an opinion that the claim charts were sufficient and the complaint adequate, Ramey LLP filed the Lawsuit."

The Whitestone Law Firm was formed in September of 2022 and is an independent law firm providing legal representation to numerous client's, not associated with AiPi. In June and July of 2023, AiPi became aware of a number of non-AiPi matters in which Mr. Ramey had been sanctioned by Courts. AiPi became concerned that Mr. Ramey may not be properly handling some of the matters with which it had been intrusted by clients of AiPi. The principle of AiPi, Mr. Eric Morehouse, contacted undersigned counsel, Mr. Zito in September of 2023, to review a

number of cases being handled by Mr. Ramey and provide an assessment of the cases. Mr. Morehouse had been an employee of Mr. Zito's firm in the mid 1990's. In addition, one of the employees at AiPi had also been an employee of Mr. Zito's law firm from 1999 through 2007. These individuals were familiar with Mr. Zito's experience. Beginning in mid September, 2023, Mr. Zito began a comprehensive review of the Ramey cases, as well as other cases filed on behalf of AiPi clients. Mr. Zito was asked to evaluate and to recommend appropriate actions and to address any concerns.

Mr. Zito undertook a review of approximately ninety Ramey cases and another dozen AiPi client cases handled by other counsel. Mr. Zito made appearances in approximately sixty to seventy cases and shut down about two dozen of those cases. Mr. Ramey remained on as co-counsel in some cases and choose to withdraw from others. Some pending cases had already been dismissed and some had advanced to Motions for Fees. Currently approximately forty of the cases originally filed by Mr. Ramey and reviewed by Mr. Zito remain pending, now handled by the Whitestone firm and local counsels.

AiPi, Inc. is not a law firm and has never held itself out as a law firm. AiPi relied upon Mr. Ramey as lead counsel, and along with other lawyers at his firm as counsel of record, to provide competent legal services. AiPi provided support and back up to Mr. Ramey and also supplied materials, including patents and claim charts for evaluation by Mr. Ramey. Mr. Ramey was to review and evaluate the materials and to make determinations and to advise on the reasonableness of filing cases. Mr. Ramey, was the individual making the final legal determinations and decisions on filings with the various Courts. AiPi relied upon Mr. Ramey for legal evaluations and decision making.

**FACTS REQUESTED BY THE COURT:**

The Court set forth five categories of information that Mr. Ramey was required to provide:

The following are the responses provided by Mr. Ramey followed by undersigned counsel's comments:

1. The number of lawsuits in which Mr. Ramey or Ramey LLP are currently listed as counsel of record in any court in the United States.

    Ramey Answer: Ramey is listed as counsel or lead counsel in 126 currently pending cases.

    **Comment:** Pacer lists Mr. Ramey as counsel in 155 Open cases.

2. The number of patent lawsuits that Mr. Ramey or Ramey LLP have filed or entered appearances in over the last 12 months.

    Ramey Answer: In the past 12 months, Ramey LLP has filed 217 cases.

    **Comment:** Pacer shows 231 filed in the past 12 months and 694 filed in the past three years, up from only 2 cases filed in 2019.

3. The number of attorneys that are currently employed at Ramey LLP.

    Ramey Answer: Ramey LLP employed 8 lawyers and one patent agent into October of 2023. Currently Ramey LLP employs 6 lawyers and the one patent agent. Typically, our clients provide additional technical resources for case assistance, as did AiPi, as explained in paragraphs 3-9. With AiPi, we also had additional legal help from attorneys with AiPi and then the same attorneys as they moved to Whitestone Law.

    **Comment:** The number of lawyers and the support received from AiPi appears consistent with the information known to AiPi and to undersigned counsel.

4. The number of times in the past three years that Mr. Ramey, Ramey LLP, or the clients of Ramey LLP have been sanctioned by any court or bar disciplinary body, including any public or private censures, and any orders to pay attorney's fees for any reason.

-4-

       Ramey Answer:       Over the past three years, from 12/14/2020 to today, Section 285[1] sanctions have been issued in:

1) Case No. 6:22-cv-00387, *Verna Ip Holdings, LLC v. Alert Media, Inc.* - Western District of Texas (No Appeal)
2) Case No. 2:17-cv-00042 (lead), 2:17-cv-00044, *Traxcell Technologies, LLC v. Huawei* - Eastern District of Texas (Under Appeal) - not correct
3) Case No. 2:17-cv-00718 (lead), 2:17-cv-00719 and 2:17-cv-00721, *Traxcell Technologies, LLC v. AT&T* – Eastern District of Texas (Under Appeal)
4) Case No. 3:22-cv-08711, *EscapeX IP LLC v. Google LLC* – Northern District of California (Under Appeal)
5) Case No. 3:22-cv-00970, *ZT IP v. VMware* – Northern District of Texas (No Appeal)
6) Case No. 2:18-cv-00156, *WPEM, LLC v. Soti Inc.* – Eastern District of Texas (No Appeal)[2]

**Factual Inaccuracy:** Mr. Ramey only lists 6 cases, when a quick search of Docket Navigator (Exhibit 3) uncovers 16 (these cases are attached hereto as Exhibit 1). The last three years of sanctions are set forth below:

    Included by Ramey    1 - *Verna IP Holdings*, 422 August 2023 (TXWD) . . . $48,076.50
    2 - *Traxcell v Huawei.*, 044 (TXED) . . . . . . . . . . . . . . . $18,606.62
    3 - *Traxcell v. Verizon* 718 Dec 2022 (TXED) . . . . . . $489,710.00
    4 - EscapeX v Google, (CAND) August 2023 . . . . . . . $191,302.00
    5 - *ZT IP, LLC* (TXND.) February 2023 . . . . . . . . . . . $92,130.35
    6 - *WPEM, LLC* (TXED) February 2020 . . . . . . . . . . . $179,622.00

**Omitted by Ramey:**    7 - *NetSoc, LLC v. Oath Inc.*, 18-cv-12267 (NYSD) Feb 2021 **Fees under sec 285** . . . . . . . . . . . . . . . . . . . . . $22,106.00

    8 - NetSoc v Quara 18-12250 NYSD
    Feb 25, 2021   **fees under sec 285** . . . . . . . . . . . . . . . . . . . . . $6,930

    9. Traxcell v Nokia 17-cv-44 TXED
    March 2023 **fees under sec 285** . . . . . . . . . . . . . . . . . . . . . $44,866

    10. Traxcell v Verizon 17-cv-721
    TXED March 29, 2022 **fees under sec 285** . . . . . . . . . $132,046.50

---

[1] Mr. Ramey changed the question. The Court required "for any reason" Mr. Ramey narrowed his response to "Section 285 sanctions." This is intentionally misleading. In addition, Mr. Ramey's response is deficient even under the "sec 285" qualification. Mr. Ramey omitted at least eight cases which specifically issued sec 285 sanctions.

[2] Ramey's statement of "NO Appeal" is not accurate. This sanction was appealed and affirmed (affirmed in *WPEM, LLC v. SOTI Inc.*, 837 Fed. Appx. 773 (Fed. Cir. 2020));

      11. Traxcell v Sprint 17-719 TXED
Nov 10, 2022 **fees under sec 285** . . . . . . . . . . . . . . . . . $784,529.16

      12. Traxcell Sprint  17-cv-719 TXED
June 15, 2020 **Costs only** . . . . . . . . . . . . . . . . . . . . . . . . 21,360.69

      13. Traxcell v Nokia 17-cv-44
TXED  March 2020 **Costs only** . . . . . . . . . . . . . . . . . $   12,657.93

*Older than 3 Years:*

      14. Traxcell v Nokia March 2018
TXED  **fees under sec 285**  . . . . . . . . . . . . . . . . . . . . . . . . $25,000

      15. Traxcell v ALE February, 2018
**fees under sec 285** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $20,202.14

      16. - *EMED Techs. Corp. v. Repro-Med Sys., Inc*., No. 1:18-cv-05880, Dkt. 167 (S.D.N.Y. Nov. 12, 2019) **Sec 285 fees**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $992,431.35

5.    The number of motions for sanctions (or for attorneys fees) that are currently pending against Mr. Ramey, Ramey LLP, or its clients in any court.

Ramey Answer:    My Firm's search revealed the cases with fee motions currently pending include:

1) Case No. 6:22-cv-00316, *LS Cloud Storage Technologies LLC v. Amazon.com* – Western District of Texas (Awaiting Order)
2) Case No. 6:22-cv-00261, *MCOM IP, LLC v Cisco* - Western District of Texas (Awaiting Order)[3]
3) Case No. 6:22-cv-01042, *CTD Networks LLC v. Google LLC* – Western District of Texas (Awaiting Order) (No longer counsel of record as of December 13, 2023)
4) Case No. 6:22-cv-01049, *CTD Networks LLC v. Microsoft Corporation* - Western District of Texas (Awaiting Order) (No longer counsel of record as of December 13, 2023)
5) Case No. 6:22-cv-01039, *CTD Networks LLC v. Cisco Systems, Inc.* - Western District of Texas (Awaiting Order) (No longer counsel of record as of December

---

[3] It should be noted that the MCOM case was dismissed because Ramey failed to appear for the oral argument see Dkt entry #49 and Dkt#50.  This was the second time he failed to appear for a hearing in the same matter, see Dkt entry #25 (see Exhibit 2)

    13, 2023)
    6) Case No. 6:22-cv-00252, *Silent Communications, LLC v. BlackBerry* - Western District of Texas (Awaiting Order)
    7) Case No. 1:22-cv-00484, *Wireless Discovery, LLC v. The Meet Group* – District of Delaware (Awaiting Order)
    8) Case No. 1:22-cv-00480, *Wireless Discovery v. Eharmony* – District of Delaware (Awaiting Order)
    9) Case NBo. 1:23-cv-01646, *Ortiz & Associates Consulting, LLC v. Lexmark International, Inc.* – District of Colorado (Briefing not Complete)

**Comment**: Mr. Ramey has neglected to include the pending sanctions motions[4]:

    10) *Verna Holdings v Alert Media Case No.* 6:22-cv-00387 Western District of Texas

    11) *Missed Call v Fresh Works* 22-cv-39-CFC District of Delaware, sanctioned *sua sponte* for failure to attend hearing, amount to be determined. (see Exhibit 3)

**DISCUSSION:**

Mr. Ramey's sanctions troubles date back at least to December of 2017, see *Case 2:17-cv-00042-RWS-RSP, Dkt#142, Filed 12/21/17*, and have nothing to do with AiPi or the Whitestone Law Firm. To date, AiPi has been able to avoid sanctions. In *17-42 TXED*, The US District Court for the Eastern District of Texas issued sanction for failure to comply with rules and requiring motions to compel from defendants:

> "Traxcell's response to Samsung's motion to strike opened with confusing discussion of the due process clause of the United States Constitution, contending that Samsung's motion "fails to give any notice (much less clear notice) of either the purportedly sanction-authorizing statute or rule under which the Motion seeks sanctions or the sanction standards under which Traxcell's conduct is to be assessed." *See* Dkt. No. 49 at 1-3. . . . The hearing on defendants' emergency motions to strike Traxcell's infringement contentions revealed a number of problems that Local Patent Rule 3-1 is designed to prevent. The first is that, generally speaking, Traxcell's infringement contentions are an unintelligible maze, with color-coding that is not always consistent, attachments, exhibits, and cross-references to summaries allegedly explaining what the asserted claims require and the accused products include. *See, e.g.*, Dkt. No. 114-5 ('024 patent infringement contentions). The point of the rule is for Traxcell to solidify, to the best it

---

[4] These two cases were known to the undersigned, no extensive search was undertaken to determine the full extent of pending sanctions.

> can at this stage, the theory of how the accused products infringe the asserted claims. Traxcell's infringement contentions make it impossible for a defendant to determine the theory of infringement with any certainty. The claims are set out, and much evidence concerning the accused instrumentalities is included, but no clear linkage is established between them. Perhaps because so much information is included, it is impossible to determine what aspects of the defendant's products are alleged to meet the various limitations . . . . The second problem . . . The third problem . . . The fourth problem . . . These problems are just a few that render Traxcell's infringement contentions defective. The list is not exhaustive. . . . The local patent rule required Traxcell to serve adequate infringement contentions in June of 2017. Because Traxcell has yet to comply with the local rule, almost a year after Traxcell's complaints were filed, a just sanction is for Traxcell to be taxed reasonable expenses, including attorneys' fees, incurred in the filing and hearing of defendants' motions to compel compliance.

Two years later, in November of 2019, the Southern District of New York, in EMED v Repro-Med (Case #16 above) entered an attorney fees sanctions of $992,431.35 for filing an "objectively baseless" case and for "bad faith conduct," finding that:

> ". . . fees should be awarded for the entire litigation. That is so for two reasons. First, RMS never should have had to incur any fees because EMED's claim was objectively baseless from the start. Second, EMED's bad faith conduct pervaded the litigation, including at the venue and preliminary junction stages as well as through the arguments it pressed on claim construction and summary judgment. "

A couple months later, in February of 202, the Eastern District Of Texas, *WPEM, LLC* (TXED) #6 above, in awarding $179,622 of attorney fee sanctions, found another Ramey case baseless from the start:

> ". . . crucially, the Court finds that WPEM conducted *absolutely no* pre-filing investigation into the validity or enforceability of the Asserted Patent. Even the most cursory of such investigations would have revealed the grounds for invalidity and unenforceability SOTI now asserts. Having failed to conduct a pre-filing investigation, the Court finds that WPEM has unreasonably subjected SOTI to the costs of litigation and should properly bear its attorneys' fees. . . . . Additionally, a review by WPEM's counsel [Mr. Ramey] of Mr. Taylor and Ms. Pantoja's prior works would have alerted WPEM to the likelihood that the '246 Publication might be invalidating prior art."

The Texas Court noted that:

> Finally, not only did WPEM fail to consider the potential impact of Ms. Pantoja's

> assertion of inventorship of the Asserted Patent, it appears that this problem may have been affirmatively *created* by WPEM's counsel [Mr. Ramey]. The document in which Ms. Pantoja declares under penalty of perjury that she is an inventor of the Asserted Patent is an assignment assigning her rights in the Asserted Patent to WPEM. (Dkt. No. 39-14.) This assignment, executed two days before WPEM brought suit, appears to be part of the effort undertaken at counsel's advice to "ensure clean title" of the Asserted Patent in WPEM. (Dkt. No. 53-8 ¶ 10.)

A year later, February 2021, fees in *NetSoc, LLC v. Oath Inc.*, #7 above and NetSoc v Quara #8 above were granted, the Southern District of New York, in the underlying Order, *Case 1:18-cv-10262-RA Dkt #118 Filed 12/10/20* noted that Mr. Ramey admitted to filing the wrong claim charts:

> On July 8, 2019, over three months after Defendants filed their motions to dismiss, Plaintiff's counsel William Ramey admitted for the first time to counsel for Oath and Quora that the charts in the original complaints were incorrect. He acknowledged via email that the charts in fact identified claims from U.S. Patent No. 9,218,591 (the "'591 Patent"), not the '107 Patent. *See* Dkt. 91 Ex. 2 (email from William Ramey to counsel for Oath stating that "our charts were for the '591 patent not the '107 patent. The Complaint listed the wrong patent number but the correct chart."); Dkt. 93 Ex. 2 (email from William Ramey to counsel for Quora stating that "our complaint charted the correct claim language but misidentified the patent. [W]e listed the related '107 patent when it should have been the '591 patent").

The Southern District of New York then found Mr. Ramey's conduct exceptional, found his excuses "inconsistent" and awarded fees:

> The most significant factor suggesting that this case is "exceptional" is that Plaintiff ignored the deficiency in its pleading of the '107 Patent claims for approximately three months after being informed of the error. This alone makes this case "stand out" from others. The Court agrees that it is objectively unreasonable to maintain the incorrect patent claims once the error was brought to Plaintiff's attention in the motion to dismiss. See Oath Mot. to Dismiss, No. 18-CV-12267 (RA), Dkt. 28, at 16–19. A cursory examination of Claim 1 of the '107 Patent compared with the claims listed in NetSoc's complaints reveals that the language of the claims as filed is not an accurate recitation of the language of the claims in the patent, and the fact that Defendants pointed out such a glaring mistake in a pleading should have put counsel on notice of this error.
> NetSoc's explanations for making this mistake in the pleadings are

-9-

> inconsistent. Counsel first argues . . . (citing Declaration of William P. Ramey, III) . . . Yet Plaintiff also contends that . . . NetSoc also argues that . . . Finally, NetSoc claims that . . .
> 
> None of these arguments address the fact that a reasonable investigation of the claim charts in NetSoc's complaints would reveal that they were distinct from the language of the actual '107 Patent, or explain why NetSoc did not at least check its complaints against the language of the '107 Patent once informed that they contained substantive errors. Nor do they address the argument that counsel was on notice from Quora and Oath's motions to dismiss in late March, but NetSoc failed to amend the Complaints for four months. . . . NetSoc's failure to correct its pleadings after counsel for both Oath and Quora informed it of the errors they contained qualifies as exceptional.

In March of 2022, The Eastern District of Texas again issued sanctions, Traxcell v Verizon 17-cv-721 case #10 above, this time in the amount of $142,046.50, because the infringement theories were "objectively baseless" and because of the "disregard of earlier rulings" finding that:

> The Court finds this case "exceptional" under § 285 based on Traxcell's pursuit of objectively baseless infringement theories and filing of meritless motions that disregarded the earlier rulings. . . . Traxcell's failure to address Fed. R. Civ. P. 72(a) and its continual repetition of arguments that the Court has already rejected are among many examples of Traxcell's disregards of the Court's prior reasoning and orders. The fact that further appeals are always available does not rescue objectively baseless positions. . . .
> However, the Court does not find the case exceptional solely for Traxcell's continued reliance on unsupported infringement theories: it is Traxcell's filing of meritless motions and continual disregard of the Court's reasoning that tips the scales towards finding this case exceptional. . . .
> . . . The Court agrees with Verizon and finds that deterring Traxcell from disregarding the Court's reasoning in future cases before this Court is another factor that weighs in favor of awarding fees.

Despite the Court's intended "deterrence", Mr. Ramey continued on undeterred, in November of 2022, sanctions were again imposed by the Eastern District of Texas, this time rising to $784,529.16. In *Traxcell v Sprint 17-719*, Case #11 above, the Court made the same observations, reiterating that:

> "The mere possibility of further appeal does not rescue baseless positions from being untimely. . . . "the Court agrees that this case is exceptional under 35 U.S.C. § 285. Traxcell continued to pursue theories that it knew or should have known were baseless. It filed meritless motions, constantly reurging positions that had already been rejected. Traxcell's conduct, when viewed considering the totality of the circumstances, renders this case exceptional under 35 U.S.C. § 285."

In December of 2022, the sanctions involving Mr. Ramey began to accelerate, In *Traxcell v. Verizon 718*, case #3 above, the sanctions were $489,710 for essentially the same conduct:

> . . . the Court agrees that this case is exceptional under 35 U.S.C. § 285. Traxcell continued to pursue theories that it knew or should have known were baseless. It filed meritless motions and argued positions that had already been rejected. Traxcell's conduct, viewed considering the totality of the circumstances, renders this case exceptional under 35 U.S.C. § 285.

A few months later, in February of 2023, The District Court for the Northern District of Texas issued sanctions in *ZT IP v VMWare* case#5 above. The *ZT* Court found the same lack of attention to facts and a lack of adequate investigation by Ramey, as observed by other Courts:

> Somehow, amidst extensive references to the ESX 1.5 user manual, ZT failed to notice that VMware released ESX 1.5 in 2002, a year before the '583 patent application. This is where the questions before the Court today really begin.
>     After VMware received notice of ZT's suit against it, VMware alleges that it "contacted ZT repeatedly (through in-house and outside counsel) to identify obvious deficiencies in the Complaint." VMware explained to ZT's counsel by using publicly available VMware documentation that ESX 1.5 predated the '583 patent's filing date. . . .
>     . . . the Court today looks at ZT's own evidence and sees that ZT conducted an inadequate investigation because it did not see what clearly stood before it: the obvious and essential fact that VMware released ESX 1.5 in 2002. ZT did not understand its own submissions of claim charts which referenced documents that read "2002" in direct reference to ESX 1.5.
>     Furthermore, . . . ZT could have undoubtedly uncovered this information in less than a minute after being alerted to it by VMware.
> . . . Furthermore, if ZT were to argue that it somehow could not find the public information (which is almost an objective impossibility), it still inadvertently proved it had access to some relevant information because its own claim charts attached to the complaint contain citations to materials bearing a 2002 copyright date. **Either ZT frivolously cited a document that it did not review, or ZT reviewed the document and saw the date but ignored it.**
>     And whether it acted in ignorance or negligence, ZT looks worse because

of its counsel's previous failure in a similar situation. Two years ago, in another patent suit in the Eastern District of Texas, ZT's counsel **William Ramey** represented plaintiff WPEM, LLC. There, Judge Gilstrap wrote the following:

> Additionally, and crucially, the Court finds that WPEM conducted absolutely no pre-filing investigation into the validity or enforceability of the Asserted Patent. Even the most cursory of such investigations would have revealed the grounds for invalidity and unenforceability SOTI now asserts. Having failed to conduct a pre-filing investigation, the Court finds that WPEM has unreasonably subjected SOTI to the costs of litigation and should properly bear its attorneys' fees.

ZT finds itself in a similar position today **with Ramey again serving as counsel**. The standard for an exceptional case does not change based on counsel's previous failures; however, a previous warning about certain pre-filing failures aids the Court in finding frivolousness, motivation, and the need to advance considerations of compensation and deterrence. Here, it is clear that ZT's counsel should have been aware enough to recognize the importance of scrutinizing pre-filing materials (or conducting an adequate pre-filing investigation in general) before bringing suit. If ZT performed a simple search on the internet or looked at the materials it cited, it would have seen information showing a May 13, 2002, release date of ESX 1.5. ZT, however, did not do this.

> . . . Five days later, on July 13, VMware requested a meet and confer in advance of filing its Rule 11 motion, and though ZT did not initially respond, it finally did—breaking six weeks of silence—and the two parties agreed to meet and confer on July 18. ZT does not dispute what occurred at the meeting nor does it dispute its counsel's [Ramey] use of expletives directed at VMware during the conference.

The next month, March 2023, The Eastern District of Texas issued a sanctions Order in Traxcell v Nokia 17-44, case #9 above.   The Court again relying on Ramey's improper actions:

> August 13, 2019: Judge Payne denied the motion for leave to file objections to the claim construction order as being nearly six months past the objection deadline. Docket No. 405. . . . determined that Traxcell's conduct became exceptional after August 13, 2019—the date that Judge Payne denied Traxcell's motion for leave to file out-of-time objections to the claim construction order—and ordered Traxcell to pay Nokia's attorney's fees from August 13, 2019 to December 31, 2019 (totaling $44,866.27). . . . By that date, Traxcell's decision to maintain the litigation became unreasonable because it no longer had any viable argument relating to claim construction pending before the Court.

In June of 2023, AiPi, after becoming aware of some of these instances of sanctions, none of which had occurred in any AiPi matter, became concerned with Mr. Ramey, especially

in light of the Courts' notice of Mr. Ramey's lack of attention to important facts.

In August of 2023, two courts, The Western District of Texas in *Verna IP Holdings, 422, case #1 above and* The Northern District of California in EscapeX v Google, case #4 above, issued sanctions orders. In Verna IP, the Court found fault with Mr. Ramey's actions:

> Considering the totality of the circumstances, the Court deems this case exceptional as of May 11, 2022, and awards Alert Media its attorneys' fees beginning from that date. . . . Considering the totality of the circumstances, Verna's litigation conduct was objectively unreasonable after May 11, 2022, justifying a finding of exceptionality under § 285 from that date.

In deciding the *EscapeX* case, the Northern District of California made more extensive findings:

> "Although this case would be exceptional under section 285 in any event, ExcapeX certainly poured dirt on itself by engaging in this litigation misconduct. The attorneys for EscapeX are lucky that Google did not separately ask the Court to impose sanctions on them. *See Segan LLC v. Zynga Inc.*, 131 F. Supp. 3d 956, 964 (N.D. Cal. 2015) ("[lawyers] could be held jointly and severally liable under Rule 11 for an entire section 285 fee award if they file such an objectively baseless patent infringement suit in the future.").
> This was, in short, an effort to force a modest settlement by pestering a tech giant with a frivolous suit on the assumption that the tech giant will prefer to capitulate than fight back. Indeed, EscapeX and its parent company DynaIP have a history of bringing frivolous suits for this purpose. *See* Dkt. No. 41 at 15–16 (collecting cases); *see also* Dkt. No. 41 at 9 n.2 & 24 n.8. EscapeX is ordered to reimburse Google in the amount of $191,302.18.

**CONCLUSION**:

AiPi was justified in it review of Ramey cases. AiPi also undertook a review of non-Ramey cases. AiPi acted properly in its recommendations to clients to move away from the Ramey firm. New counsel acted reasonably when in some instances litigations begun by Mr. Ramey were shut down as appropriate.

Despite the continuous sanctions, the lower number of attorneys at the firm, and the overextended work load, the Ramey Law Firm continues to be in the top five firms with the most

new filings at least one week each month; and was No.2 just last week:

**Weekly Insights**
Trends In Patent Litigation | Week of December 18, 2023

★ Highly Assertive Entity (HAE)   ★ Local Counsel

**TRENDING FIRMS**

**Top Firms**
Firms entering appearances in the largest number of new patent cases last week.

| Patentee Firms | Patent Challenger Firms |
|---|---|
| Beaty Legal | Fish & Richardson |
| Ramey | Quinn Emanuel Urquhart & Sullivan |
| Dorsey & Whitney | Baker Botts |
| Scott Douglass & McConnico ★ | Ernst Brown & Draper |
| Goodwin Procter | Haynes and Boone |

Mr. Ramey beat out Dorsey and Whitney (516 lawyers), Scott, Douglass and McConnico (41 lawyers) and Goodwin Procter (1,800 lawyers).

Whitestone Law takes no position on the Court's suggestion of referral.

The above is submitted on Behalf of Mr. Zito and Whitestone Law, as Ordered by the Court and is not a submission on behalf of any party in this matter,

Date: November 28, 2023                              Respectfully submitted,

                                                     ___/s/ Joseph J. Zito_____
                                                     Joseph J. Zito
                                                     Whitestone Law
                                                     1850 Towers Crescent Plaza, #550
                                                     Tysons, Virginia 22182
                                                     202-466-3500
                                                     jzito@whitestone.law

CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on December 28 the foregoing Reply to Response to Show Cause with Exhibits, was filed with the Clerk of Court using the CM/ECF system, which send a notification of such filing to counsel of record.

                                        /s/ Joseph J. Zito
                                       Joseph J. Zito