UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NETSOC, LLC,<br><br>     Plaintiff,<br><br>  v.<br><br>CHEGG INC., *et al.*,<br><br>     Defendants. | 18-CV-10262 (RA) |
| NETSOC, LLC,<br><br>     Plaintiff,<br><br>  v.<br><br>OATH INC.,<br><br>     Defendant. | 18-CV-12267 (RA) |
| NETSOC, LLC,<br><br>     Plaintiff,<br><br>  v.<br><br>QUORA, INC.,<br><br>     Defendant. | 18-CV-12250 (RA)<br><br>MEMORANDUM<br>OPINION & ORDER |

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:

RONNIE ABRAMS, United States District Judge:

Plaintiff NetSoc, LLC filed patent infringement actions against Defendants Oath Inc.[1] and Quora, Inc., which were consolidated at the parties' request with similar cases pending before the Court against LinkedIn Corp. and Chegg Inc. *See* No. 18-CV-10262 (RA), Dkt. 35.[2] The claims involved U.S. Patent No. 9,978,107 (the "'107 Patent"), entitled "Method and System for Establishing and Using a Social Network to Facilitate People in Life Issues."

Other than the instant motion, all other issues in this consolidated case have been resolved. Claims against Quora and Linkedin were transferred to the Northern District of California. *See* Dkt. 101; *see also NetSoc, LLC v. LinkedIn Corporation*, No. 19-CV-12215 (RA) at Dkt. 73. The actions against Oath and Chegg were dismissed on collateral estoppel grounds. *See* Dkt. 111; *see also* No. 18-CV-12267 (RA) at Dkt. 92. Remaining for resolution are Defendants Oath and Quora's (together, "Defendants") motions for attorneys' fees and Oath's related motion to seal in part its filings in support of its motion for attorneys' fees. Dkt. 89. For the following reasons, the motion to seal is denied, and the motion for attorneys' fees under 35 U.S.C. § 285 is granted with modification.

## BACKGROUND

Plaintiff NetSoc, LLC filed separate actions against Defendants Oath Inc. and Quora, Inc. alleging infringement of the '107 Patent. *See* First Am. Oath Compl., No. 18-CV-12267 (RA), Dkt. 22, at 1; *NetSoc, LLC v. Quora, Inc.*, No. 18-CV-12250 (RA), Dkt. 5, at 1 (Quora Compl.); '107 Patent, No. 18-CV-12267 (RA), Dkt. 1-1. On March 25, 2019, NetSoc's claims against Oath and Quora were consolidated at the parties' request with similar cases against Chegg and Linkedin, all asserting

---

[1] NetSoc originally sued Yahoo! Inc. On July 29, 2019, by stipulation of the parties, this Court amended the case caption to reflect the substitution of Oath Inc. for Yahoo! Inc. in this case. *See* No. 18-CV-10262 (RA), Dkt. 69. This Opinion refers throughout to "Oath."

[2] All docket references in this Opinion refer to the consolidated docket, No. 18-CV-10262 (RA), unless otherwise noted.

2

infringement of the '107 Patent.  *See* Dkt. 35.  Only Oath and Quora now move for attorneys' fees; Chegg and LinkedIn do not.

NetSoc's First Amended Complaint against Oath and Complaint against Quora both contain a chart comparing what is labeled "Claim 1" of the '107 Patent to Defendants' websites and descriptions of their services.  *See* First Am. Oath Compl. ¶ 10; Quora Compl. ¶ 10.  These charts were intended to demonstrate the alleged infringement.  However, Claim 1 as alleged in the Complaints does not accurately quote Claim 1 of the '107 Patent.  Though the claims charted in the Complaints deal with similar subject matter to Claim 1 of the '107 Patent, they are materially different, as shown in the table below:

| Claim 1 (from Oath Complaint) | Claim 1 (from '107 Patent) |
| --- | --- |
| A method for establishing a social network, the network comprising: | A method for establishing a social network, the method being implemented on a network computer system and comprising: |
| maintaining a list comprising a plurality of participants, wherein each participant in the plurality of participants corresponds to one or more individuals, wherein the list also includes information associated with at least one of each participant or the one or more individuals that correspond to each participant; | maintaining a list comprising a plurality of participants, wherein each participant in the plurality of participants corresponds to one or more individuals, wherein the list also includes information associated with at least one of each participant or the one or more individuals that correspond to each participant; |
| presenting a user with a plurality of categories from which the user may make a selection of a category from the plurality of categories; | presenting a user with an interface from which the user makes a selection of a category from a plurality of categories; |
| receiving the selection of the category by the user; in conjunction with the selection of the category, receiving an electronic communication from the user for an unidentified respondent, wherein the | in response to receiving the selection of the category by the user, displaying, for the user, some of the information associated with each of multiple participants from the plurality of participants which match the selection of the category by the user, while shielding |

3

| | |
|---|---|
| electronic communication contains an inquiry of the user; | contact information associated with each of the multiple participants; |
| after receiving the selection of the category by the user, selecting one or more participants from the list to receive the electronic communication, wherein selecting is based at least in part on the selection of the category or the information associated with at least one of each participant or the one or more individuals that correspond to each participant; | wherein displaying some of the information associated with each of the multiple participants is based at least in part on a rating of individual participants in the plurality of participants; |
| sending the inquiry to the selected one or more participants; | enabling the user to send an inquiry message to one or more of the multiple participants, while shielding the contact information from the user, the contact information including any messaging identifier that is associated with each of the one or more participants; |
| receiving a response to the inquiry from the selected one or more participants, the response from each of the one or more participants including biographical information about that participant; | tracking a response time of each of the one or more participants who received the message from the user; and |
| publishing at least a portion of the response from each of the selected one or more participants for other users to view, wherein publishing is performed without identifying the user but includes providing biographical information about the participant who provided the response; | updating the rating associated with each of the one or more participants based at least in part on the tracked response time. |
| tracking feedback for each of the selected one or more participants based at least in part on the published portion of the response, including determining a rating from the user for at least one of the selected one or more participants. | |

On March 25 and March 26, 2019, respectively, Quora and Oath moved to dismiss the actions against them, arguing that the discrepancy between the claims of the '107 Patent and the claims as alleged in NetSoc's complaint made it impossible to defend themselves. *See* Oath Mot. to Dismiss, No. 18-CV-

12267 (RA), Dkt. 28, at 16–19 ("NetSoc has failed to allege how Oath allegedly infringes the '107 patent because all the facts relating to Oath's infringement are provided as purported evidence of satisfying language that is not even found in the '107 patent's claims."); Quora Mot. to Dismiss, No. 18-CV-12250 (RA), Dkt. 22, at 16–19 ("[T]he claim language provided in Paragraph 10 [of NetSoc's complaint] is not the language that claim 1 of the '107 patent actually recites."). Both argued alternative grounds for dismissal, including that the '107 Patent's subject matter was too abstract to be patentable. *See* Quora Mot. to Dismiss at 7–13; Oath Mot. to Dismiss at 8–14.

NetSoc's oppositions to the motions to dismiss did not address the contention that the language attributed to the '107 Patent in its complaints differed from the actual language of the '107 Patent's claims. Rather, NetSoc's response to Oath's motion to dismiss repeatedly refers to the "embedded, detailed infringement chart" as demonstrating that the claim could survive a motion to dismiss. *See* Pl. Opp'n to Oath Mot. to Dismiss, No. 18-CV-12267 (RA), Dkt. 33, at 9, 14, 15. In their reply briefing, Oath and Quora both reiterated that NetSoc had alleged infringement of patent claims that did not exist in the '107 Patent. *See* Quora Repl., No. 18-CV-12250 (RA), Dkt. 43, at 1 ("[T]he Complaint identifies a claim that does not exist and Plaintiff does not address this fundamental flaw."); Oath Repl., No. 18-CV-12267 (RA), Dkt. 38, at 1 ("Indeed, the Amended Complaint identifies a claim that does not exist.").

On July 8, 2019, over three months after Defendants filed their motions to dismiss, Plaintiff's counsel William Ramey admitted for the first time to counsel for Oath and Quora that the charts in the original complaints were incorrect. He acknowledged via email that the charts in fact identified claims from U.S. Patent No. 9,218,591 (the "'591 Patent"), not the '107 Patent. *See* Dkt. 91 Ex. 2 (email from William Ramey to counsel for Oath stating that "our charts were for the '591 patent not the '107 patent. The Complaint listed the wrong patent number but the correct chart."); Dkt. 93 Ex. 2 (email from William Ramey to counsel for Quora stating that "our complaint charted the correct claim language but misidentified the patent. [W]e listed the related '107 patent when it should have been the '591 patent").

5

After revealing this error, NetSoc filed amended complaints against Oath and Quora on July 9, removing all references to the '107 Patent and alleging only infringement of the '591 Patent. *See* First Am. Quora Compl., No. 18-CV-12250 (RA), Dkt. 49; Second Am. Oath Compl., Dkt. 59.  On September 3, 2019, this Court signed a stipulation of dismissal with prejudice as to Plaintiff's infringement claims under the '107 Patent and permitted the filing of the Amended Complaints asserting claims under the '591 Patent. *See* Dkt. 82; No. 18-CV-12250 (RA), Dkt. 65.  Defendants reserved the right to move for attorneys' fees related to the '107 Patent claims, *see* Dkt. 68, and the Court set the filing schedule for this attorneys' fee motion.  *See* Dkt. 74.

On September 13, 2019, Oath moved for attorneys' fees incurred from the inception of the case in November 2018 through the amendment of the Complaints in July 2019, and in the alternative, for fees incurred after its initial Motion to Dismiss in March 2019 through July 2019.  *See* Oath Fees Mot., Dkt. 92, at 21.  Oath also filed a letter motion seeking to seal documents supporting the attorneys' fees motion on the same day.  *See* Dkt. 89.  Quora join the attorneys' fees motion.  Quora Joinder Mot., Dkt. 93, at 5.

## DISCUSSION

Defendants argue that attorneys' fees are justified under several theories.  Because Defendants are entitled to attorneys' fees under 35 U.S.C. § 285, allowing the Court to grant attorneys' fees to a prevailing party in "exceptional cases," the Court will not discuss awarding fees under Rule 11(c)(3), 28 U.S.C. § 1927, the Court's inherent power, or Rule 41(d), the alternative grounds advanced by Defendants.

### I. Defendant Oath is Not Entitled to Seal Its Motion for Attorneys' Fees

As a preliminary matter, this Court must determine whether Defendant Oath's motion for attorneys' fees may remain under seal.  Oath's counsel, Duane Morris LLP, filed the documentation supporting its attorneys' fee request under seal.  *See* Dkt. 89.  Counsel for Oath contends this

6

documentation should remain under seal because Oath's rates are the product of a "confidential RFP process" which "would make available to the public the confidential legal strategy of Oath's counsel." *Id.* Although NetSoc did not directly oppose sealing the records in this case, it did note that "[Duane Morris partner Allison] Hutton provides no description of the work performed for the hours billed" in this matter. *See* Pl. Sanctions Opp'n, Dkt. 95, at 11.

There is a "presumption of access" to "judicial documents" filed with a court. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). Before this presumption attaches, "a court must first conclude that the documents at issue are indeed 'judicial documents.'" *Id.* To be a "judicial document, 'the item filed must be relevant to the performance of the judicial function and useful in the judicial process.'" *Id.* (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*")). If found to be a "judicial document," the court "must determine the weight" of the presumption of access, based on factors such as "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*")). "Finally, after determining the weight of the presumption of access, the court must 'balance competing considerations against it.'" *Id.* (quoting *Amodeo II*, 71 F.3d at 1050).

Counsel for Oath does not contend that the documents supporting the fee request are not "judicial documents," arguing instead that the "presumption of disclosure is outweighed by other interests." Dkt. 89. Such an interest includes the privacy of an interested party. *See Lugosch*, 435 F.3d at 120.

Weighing against sealing these documents is their critical nature to the motion for attorneys' fees. In order to evaluate whether Duane Morris attorneys expended a "reasonable number of hours" and charged a "reasonable hourly rate," *Fertitta v. Knoedler Gallery, LLC*, No. 14-CV-2259 (JPO),

2018 WL 4961454, at *1 (S.D.N.Y. Oct. 15, 2018) (quoting *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)), this Court must review the materials submitted under seal by Oath's counsel. This is not a case where the Court considers the documents for which seal is requested "immaterial to the motion[]." *Compare Gosmile, Inc. v. Levine*, No. 10 CIV. 8663 PKC, 2012 WL 1382557, at *1 (S.D.N.Y. Apr. 20, 2012) (email chains discussing a product launch "have no bearing on the . . . [motion] for attorney's fees").

Oath's counsel contends that other courts in this Circuit have sealed records "under similar circumstances." Dkt. 89 at 2 (citing *LCS Grp. LLC v. Shire LLC*, 383 F. Supp. 3d 274, 278 (S.D.N.Y. 2019), and *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 365, 386 (E.D.N.Y. 2017)). However, there are key differences between this case and the sealing of attorneys' fee applications in both *LCS Group* and *Andrews*. In *LCS Group*, only "certain redactions" to the fee request were made. 383 F. Supp. 3d at 277. Despite sealing part of the submissions, the Court in *LCS Group* was able to extensively analyze both the hourly rates and time billed by counsel. *See id.* at 280–81. Oath's submission, by contrast, seeks to redact all documentation containing its attorneys' hourly rates and hours worked.

*Andrews* involved judicial approval of a quasi-class action settlement. 286 F. Supp. at 369. The parties agreed to seal the documents, and the court concluded that because the settlement "more closely resembles an individual settlement than a class settlement," sealing of fees was appropriate given that "[t]he weight afforded to the presumption of public access is, accordingly, lower than it ordinarily would be." *Id.* at 386–87. Here, however, parties have not settled and attorneys' fees are to be imposed by the Court rather than voluntarily agreed to as a condition of settlement. The weight afforded to the presumption of public access is thus higher here than it was in *Andrews*. *Cf. King Pharm., Inc. v. Eon Labs, Inc.*, No. 04-CV-5540 (DGT), 2010 WL 3924689, at *5 (E.D.N.Y. Sept. 28,

2010) (declining to seal documents relevant to a determination that a case was "exceptional" under 35 U.S.C. § 285 because "the briefing in question concerns a substantive adjudication that will determine liability for attorneys' fees, which are often quite significant in patent infringement cases").

Because this Court must refer to the materials for which seal is requested in order to determine the fees NetSoc must pay to Oath, the privacy concerns raised by Oath and its counsel do not outweigh the presumption of public access to these records. The motion to seal these documents is therefore denied.

## II. Reduced Attorneys' Fees are Awarded Pursuant to 35 U.S.C. § 285

Defendants argue that attorneys' fees should be awarded under 35 U.S.C. § 285, which allows the court to award "reasonable attorney fees to the prevailing party" in "exceptional cases." Here, the Court finds that (1) this is an exceptional case, (2) Defendants are the "prevailing parties," and (3) the fees they seek are—with some amendment—reasonable. The Court thus grants attorneys' fees under 35 U.S.C. § 285.

### A. This is an Exceptional Case

The Supreme Court has defined an "exceptional case" as "simply one that stands out from others including with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Courts should determine what is an "exceptional" case "in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* For the reasons that follow, the Court finds this case is "exceptional" and awards attorneys' fees.

The Supreme Court provided a "nonexclusive" list of factors courts could consider in determining an "exceptional" case under § 285, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular

9

circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)).

Defendants claim that this case is exceptional because "from the outset" it was clear that the '107 Patent contained unpatentable subject matter. Oath Sanctions Mot. 17. It is true that "exceptionally weak arguments undoubtedly serve to make a case 'exceptional.'" *Advanced Video Techs. LLC v. HTC Corp.*, No. 11-CV-6604 (CM), 2015 WL 7621483, at *5 (S.D.N.Y. Aug. 28, 2015), *aff'd*, 677 F. App'x 684 (Fed Cir. 2017). This assertion, however, is made with the benefit of hindsight. The Northern District of Texas ultimately held that the '107 Patent contained unpatentable subject matter, but that decision came after NetSoc amended its complaints against Oath and Quora to claim infringement of the '591 Patent. *See NetSoc LLC v. Match Group, Inc.*, 18-CV-01809-N, 2019 WL 3304704, at *3 (N.D. Tex. Jul. 22, 2019) (invalidating the '107 Patent). Though the decision in the Northern District of Texas is some indication that the "substantive strength" of NetSoc's "litigating position" was weak, *Octane Fitness*, 572 U.S. at 554, this is but one factor in the inquiry and does not by itself make the case "exceptional."

The most significant factor suggesting that this case is "exceptional" is that Plaintiff ignored the deficiency in its pleading of the '107 Patent claims for approximately three months after being informed of the error. This alone makes this case "stand out" from others. The Court agrees that it is objectively unreasonable to maintain the incorrect patent claims once the error was brought to Plaintiff's attention in the motion to dismiss. *See* Oath Mot. to Dismiss, No. 18-CV-12267 (RA), Dkt. 28, at 16–19. A cursory examination of Claim 1 of the '107 Patent compared with the claims listed in NetSoc's complaints reveals that the language of the claims as filed is not an accurate recitation of the language of the claims in the patent, and the fact that Defendants pointed out such a glaring mistake in a pleading should have put counsel on notice of this error.

NetSoc's explanations for making this mistake in the pleadings are inconsistent. Counsel first argues that the "mistake was not that the case was filed, rather it was that the '591 patent was not included, as was Plaintiff's initial plan." Pl. Sanctions Opp'n at 5 (citing Declaration of William P. Ramey, III, Dkt. 95 Ex. 2 ¶ 15). Yet Plaintiff also contends that "[t]here was no 'error' in only suing on the claims of the '107 patent, rather it was a litigation decision" based on an ongoing case construing the '107 Patent in the Northern District of Texas. *Id.* NetSoc also argues that it only brought claims of infringement under the '107 Patent "for reasons of efficiency." *Id.* at 7. Finally, NetSoc claims that "[b]ecause of claim construction proceedings in another matter construing the claims of the '107 patent, NetSoc decided to assert the '591 patent against Defendant Oath and Quora." *Id.* at 10–11.

None of these arguments address the fact that a reasonable investigation of the claim charts in NetSoc's complaints would reveal that they were distinct from the language of the actual '107 Patent, or explain why NetSoc did not at least check its complaints against the language of the '107 Patent once informed that they contained substantive errors. Nor do they address the argument that counsel was on notice from Quora and Oath's motions to dismiss in late March, but NetSoc failed to amend the Complaints for four months. Though Plaintiff is correct that the filing of its Amended Complaints before September 6 was permitted by this Court's case management plan, *see* Dkt. 43, that the amendment was permitted does not make Plaintiff's failure to correct such a pleading error for several months reasonable.

Even if infringement claims based on the '107 Patent would not have been weak if the proper patent claims were included in the original complaints, NetSoc's failure to correct its pleadings after counsel for both Oath and Quora informed it of the errors they contained qualifies as exceptional. *See Lumen View Technology, LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329, 336 (S.D.N.Y. 2014), *rev'd on other grounds*, 811 F.3d 479 (Fed. Cir. 2016) (finding an exceptional case where defendant's counsel advised that defendant's website used no "bilateral preference matching" before a complaint was filed

11

but plaintiff nonetheless sued for infringement of a patent describing a "bilateral preference matching" process).

Another factor in favor of awarding attorneys' fees in this case is "the need . . . to advance considerations of . . . deterrence." *Octane Fitness*, 572 U.S. at 554 n.6. There is no reason that any litigant, on notice of a considerable flaw in their filings from their opponents' motions, would not at least check their filing and respond, including by amendment if needed. NetSoc has provided no explanation for why it failed to correct its pleadings for three months. Behavior such as this should be deterred.

For these reasons, the Court concludes that this is an "exceptional case" within the meaning of the statute.

### B. Defendants are the "Prevailing Parties"

To be the "prevailing party" under 35 U.S.C. § 285, a defendant must "rebuff[]" the plaintiff's legal challenge, whether on the merits or otherwise. *CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1651 (2016). NetSoc contends that "Oath cannot establish it is a prevailing party as the matter is still pending." Pl. Sanctions Opp'n at 10. But this assertion is incorrect; in fact, the '107 Patent claims were dismissed with prejudice in September 2019. *See* Dkt. 82.[3] That the dismissal was voluntary does not prevent Oath and Quora from being considered "prevailing parties," given that the dismissal was with prejudice. *See Blair v. Alstom Transportation, Inc.*, No. 16-CV-3391 (PAE), 2020 WL 4504842, at *7 (S.D.N.Y. Aug. 5, 2020); *see also Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1307 (Fed. Cir. 2018) (holding that a "voluntary dismissal with prejudice under Federal Rule of Civil Procedure 41(a)(2) 'has the necessary judicial imprimatur to constitute a judicially sanctioned change in the legal relationship of the parties, such that the district court properly could entertain [the defendant's] fee claim

---

[3] Additionally, this Court dismissed NetSoc's remaining claims against Oath on January 27, 2020. Dkt. 93. NetSoc's remaining claims against Quora, which were transferred to the Northern District of California, have also been dismissed in full, *see NetSoc, LLC v. Quora, Inc.*, No. 19-CV-06518-VC, 2020 WL 415919 (N.D. Cal. Jan. 27 2020).

under 35 U.S.C. § 285."). For these reasons, the Court concludes that Oath and Quora are the "prevailing parties" within the meaning of the statute.

### C. With Minor Adjustment, the Fees Sought are Reasonable

Fee awards are "based on the court's determination of a 'presumptively reasonable fee,' calculated as 'the product of a reasonable hourly rate and the reasonable number of hours required by the case.'" *Fertitta*, 2018 WL 4961454, at *1 (quoting *Millea*, 658 F.3d at 166). Defendants' counsel worked a reasonable number of hours, and charged reasonable rates. The period of time for which fees are requested, however, is not reasonable, and thus will be reduced. The Court will consider each aspect of the reasonableness calculation in turn.

First, the Court concludes that the period of time for which fees have been sought must be reduced to be reasonable. Attorneys for both Oath and Quora request attorneys' fees from the initial filing of NetSoc's complaints through the filing of the Amended Complaints asserting the '591 Patent claims instead of the '107 Patent claims. *See* Oath Fees Mot., Dkt. 92, at 21 (seeking attorneys' fees from the inception of the case through the dismissal of the '107 claim); *see also* Quora Joinder Mot., Dkt. 93, at 2 (same). This Court, however, concludes that NetSoc's conduct became "extraordinary" only after NetSoc was put on notice of the error in filing. Thus, NetSoc is not responsible for those attorneys' fees amassed before March 25, 2019 and March 26, 2019, respectively. Instead, the Court will only award fees incurred after those dates and before July 9, 2019 (the date on which the erroneous claims were amended).

Within that limited time period, however, the Court concludes that the time expended by Defendants' counsel was reasonable. An award of attorneys' fees should compensate only for "hours reasonably expended on the litigation," and not for "hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983). Quora's counsel—including both attorneys and paralegals—spent only 11.8 hours of work related to reviewing NetSoc's opposition to

13

Quora's motion to dismiss, drafting their reply brief, and attending of joint defense group calls.  Quora Joinder Mot., Dkt. 93, at 2.  Moreover, 9.45 of the hours billed were handled either by a senior associate or paralegal.  *Id*.  This expenditure of time was reasonable.  Similarly, Oath's counsel billed 66.10 hours from the filing of the initial motion to dismiss through the end of July 2019.  *See* Hutton Decl., Dkt. 91 Ex. G.  This time was spent reviewing NetSoc's opposition, drafting Oath's reply brief, coordinating with other defendants to submit their motion for a stay of discovery, and responding to NetSoc's Amended Complaint.  *See id*.  Of these 66 hours, approximately half were billed by Allison Hutton, the primary attorney on this case, with the remainder billed by an associate, paralegal, and law clerks.  *See id*.  This expenditure of time was reasonable as well.

The Court also concludes that the fee rates charged were reasonable.  To determine a "reasonable hourly rate," a court must consider the "prevailing market rate," meaning "the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'"  *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).  The "relevant community . . . is the district in which the court sits."  *Farbotko v. Clinton Cty. of New York*, 433 F.3d 204, 208 (2d Cir. 2005).  However, "district courts have 'considerable discretion in determining what constitutes reasonable attorney's fees in a given case.'"  *River Light V, L.P. v. Lin & J Int'l, Inc.*, No. 13-CV-3669 (DLC), 2015 WL 3916271, at *10 (S.D.N.Y. June 25, 2015) (quoting *Matusick v. Erie Cty. Water Auth*, 757 F.3d 31, 64 (2d Cir. 2014)).

The declarations submitted by Quora's counsel indicate that tenth-year senior associate Megan E. Bussey charged $567/hour; partners Steven D. Moore and Jordan Trent Jones charged rates of $787.50/hour and $715.50/hour, respectively; and paralegal Susie M. Moore charged an hourly rate of $301.50/hour.  The declarations submitted by Oath's counsel indicate that partner Allison Hutton, the primary attorney on this case, charged between $515/hour and $535/hour; associate Ralph Carter's

14

hourly rate ranged between $420/hour and $460/hour; senior paralegal Edwin Grullon billed $200/hour; and various filing clerks billed $200/hour save one, who billed $210/hour.  *See* Hutton Decl., Dkt. 91.

The rates billed by Defendants' attorneys is consistent with those rates often approved by this court.  *See, e.g.*, *LCS Grp.*, 383 F. Supp. 3d at 280 (adjusting hourly rate for partners to $868.00); *Errant Gene Therapeutic, LLC v. Sloane-Kettering Institute for Cancer Research*, 286 F. Supp. 3d 585, 588 (S.D.N.Y. 2018) (accepting partner hourly rate of $765); *MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC*, No. 16-CV-8103 (LGS), 2017 WL 1194372, at *3 (S.D.N.Y. Mar. 30, 2017) (accepting hourly rates between $569.02 and $753.42 per hour for associates depending on seniority).  And although the rates charged by Defendants' counsels' paralegals and filing clerks are higher than usually awarded in this District, they are within a range this court has previously found reasonable.  *See, e.g.*, *Vaigasi v. Solow Mgmt. Corp.*, No. 11-CV-5088 (RMB) (HBP), 2017 WL 3868990, at *4 (S.D.N.Y. Sept. 5, 2017) ("With respect to the rates of the paralegals and filing clerk[s] . . . this district typically awards rates not to exceed $200 per hour."); *Genger v. Genger*, No. 14-CV5683 (KBF), 2015 WL 1011718, at *3 (S.D.N.Y. Mar. 9, 2015) (approving $260-280 paralegal rates).  Moreover, the extensive experience of those paralegals and filing clerks involved in this case contributes to the reasonableness of these fees.  *See* Hutton Decl., Dkt. 91 Ex. I (Oath's paralegal has 14 years' experience as an IP paralegal, while its filing clerks have six and eleven years' experience, respectively); *Broad. Music, Inc. v. Pamdh Enterprises Inc.*, No. 13-CV-2255, 2014 WL 2781846, at *6–7 (S.D.N.Y. June 19, 2014) (approving hourly rates of $200 for paralegal with 13 years' experience).

In sum, the Court concludes that Defendants are entitled to attorneys' fees, but solely for the period from the filing of the motions to dismiss through the dismissal of the '107 claim.

15

## CONCLUSION

For the foregoing reasons, the Court grants Oath and Quora's motions for attorneys' fees, subject to the modifications discussed above. Oath is awarded attorneys' fees in the amount of $22,106.00 and Quora is awarded attorneys' fees in the amount of $6,930.44. Oath's sealing motion is denied.

The Clerk of Court is respectfully directed to terminate the motions pending at Docket Entries 90 and 93 of Case Number 18-CV-10262, Docket Entry 66 of Case Number 18-CV-12250, and Docket Entries 66 and 69 of Case Number 18-CV-12267, and to close those cases.

SO ORDERED.

Dated:   December 10, 2020
         New York, New York

                                              RONNIE ABRAMS
                                              United States District Judge