IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Raymond P. Moore

Civil Action No. 22-cv-01986-RM-NRN

CALIFORNIA INNOVATIONS INC.,

    Plaintiff/Counterclaim Defendant,

v.

ICE ROVER, INC.,

    Defendant/Counterclaimant.

---

**ORDER ON CLAIM CONSTRUCTION**

---

    This declaratory judgment and patent infringement action is before the Court following claim construction briefing (ECF Nos. 30, 31, 32) and a hearing. *See generally Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). The parties' dispute hinges on six claim terms used in one of Defendant's patents. For the reasons below, the Court adopts Plaintiff's proposed construction of five of the terms and further finds that the plain language of the sixth sufficiently apprises persons of skill in the art and is not indefinite.

**I.    BACKGROUND**

    The parties manufacture multi-purpose insulated containers, i.e., portable coolers equipped with wheels and handles. Defendant holds three patents pertaining to the design of its coolers, prompting Plaintiff to file this lawsuit seeking declaratory judgment of patent non-infringement. Defendant asserts counterclaims for infringement based on the same three patents.

    After a scheduling conference, the parties filed a Joint Disputed Claim Terms Chart (ECF

No. 28), listing six disputed claim terms from just one of Defendant's patents—U.S. Patent No. 10,272,934. The '934 patent purports to describe specific improvements over the configurations of the prior art, namely by altering the rectangular shape of the cooler so that it is more transportable and by allowing users to attach a tow bar for pulling or towing it.

## II.     LEGAL STANDARD

A fundamental purpose of a patent is to notify the public of the invention to which the patentee has exclusive rights. *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1340 (Fed. Cir. 2003). The claims of a patent define the scope of the invention and are of primary importance in ascertaining precisely what is patented. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). "[T]he words of a claim are generally given their ordinary and customary meaning," and "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1312-13 (quotation omitted). But a patentee is not required to define an invention with mathematical precision to comply with the definiteness requirement. *Oakley*, 316 F.3d at 1341. Further, patentees may define claim terms however they like if the specification provides reasonable clarity, deliberateness, and precision. *See Abbott Labs. v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1354-55 (Fed. Cir. 2003); *see also Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1360 (Fed. Cir. 2004) ("[A] patent applicant may define a term differently from its general usage in the relevant community, and thus expand or limit the scope of the term in the context of the patent claims.").

"In most cases, the best source for discerning the proper context of claim terms is the patent specification wherein the patent applicant describes the invention." *Id.* The words of a

claim are read in view of the remainder of the patent's specification, informed, as needed, by the prosecution history of the patent. *Phillips*, 415 F.3d at 1315. In addition to these intrinsic sources, courts also rely on extrinsic evidence, including dictionaries, treatises, and expert and inventor testimony. *Id.* at 1317; *but see id.* at 1319 (advising that extrinsic evidence "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence").

### III.  ANALYSIS

The parties have analyzed the six disputed terms under four separate analyses, and the Court follows their approach.

#### A.  Junction Terms

Claim 1 of the '934 Patent describes "a junction affixed to a first side wall" (ECF No. 1-1 at 27) and claim 24 describes "affixing a junction to a first side wall" (*id.* at 28). Plaintiff's proposed construction of the first term is "an object distinct from the body physically attached to a first side wall that is configured to receive other items that are distinct from the body of the cooler." (ECF No. 30 at 11.) Its proposed construction of the second term is "physically attaching to a first side wall of the body an object that is distinct from the body and that is configured to receive other items that are distinct from the body of the cooler." (*Id.*) Plaintiff argues in the alternative that the junction terms are indefinite. Defendant's position is that they should be construed according to their plain and ordinary meaning.

The Court agrees with Plaintiff that the junction terms refer to the junction as something that becomes attached to the body of the cooler at the first side wall. The specification states that

> although some prior art coolers also have handles for carrying the cooler from one side or two oppositely disposed sides, their configuration does not support the

3

> application of a junction to accept a tow bar to be affixed to the body of the cooler. Moreover, the prior art may feature elements of portable containers that may provide the functionality of a cooler or of a wagon, however the prior art does not support the functionality of both a cooler and a wagon together.

(ECF No. 1-1 at 22.) Thus, as the specification makes clear, the purpose of adding the junction is to allow the user to connect a tow bar to the cooler, thereby improving its portability over rough terrain. Attaching the tow bar also allows the cooler to be towed with a bicycle or scooter. (*See id.* at 26.)

Plaintiff's proposed constructions clarify that the junction is distinct from the body of the cooler. In other words, it is something attached to the cooler—not part of the body of the cooler itself. This is consistent with the patent's description of the method of manufacture, which contemplates first building the body of the cooler and then adding components such as the lid, wheels, and junction. (*See id.* at 20.) It is also consistent with the ordinary meaning of "affix." *See Regents of Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 938 (Fed. Cir. 2013) ("The dictionary definition[] supports the conclusion that when a physical object is described as having been 'affixed[]' . . . to another object, it means that those objections were previously separate.").

Although the specification also uses the word "junction" to describe where the first wall and a side wall of cooler meet, that portion of the specification does not deal with the tow bar junction, and the Court is not convinced that the use of "junction" there has the same meaning that it does in the context of the junction terms. With respect to the junction terms, defining "junction" to mean the union of two walls does not make sense, and Defendant has not shown that a person skilled in the art would infer such a broad meaning of "junction" in this context. Rather, the junction terms clearly contemplate attaching a tow bar junction to the body of the cooler, whereas the other use of the term "junction" occurs in a section describing one

embodiment of the body of the cooler. The Court declines to assign a special meaning to the term because the specification does not otherwise define "junction" with reasonable clarity, deliberateness, or precision to demonstrate the patentee intended to apply a unique lexicography here. *See Abbott Labs.*, 334 F.3d at 1354-55.

Defendant's contention that the use of "affixing" in the second junction term refers to the process by which plastic beads may be melted in a mold to form the cooler body is contrary to the plain and ordinary meaning of the word. Defendant has adduced no evidence that a person of ordinary skill in the art would understand "affixing a junction to a first side wall" as referring to the manufacturing process for making the cooler body. Nor is the Court persuaded by Defendant's contention the word "junction," as used in the junction terms of the patent, may reasonably be construed so broadly as to include a contour in the cooler body. Accordingly, the Court declines to adopt Defendant's strained reading of the claim language and finds the junction terms are properly construed in the manner Plaintiff proposes.

### B. Third Term

Claims 1 and 24 of the Patent describe "a base and a third wall extending from the base to the second wall." (ECF No. 1-1 at 27, 28.) Plaintiff's proposed construction of this term is "a first planar section and a second planar section of a two-section bottom wall, the first section extending from the second section to the second wall." (ECF No. 30 at 18.) It argues in the alternative that the term is indefinite. Defendant's position is that the term should be construed according to the plain and ordinary meaning of the words used.

As the Court understands it, this term pertains to the bottom of the cooler body, which has two sections or parts—one flat (relative to the ground), the other sloped. Plaintiff's

construction is consistent with the language in the patent, which requires the sloped part (third wall) to extend "from the base to the second wall." When the cooler is pulled forward, the second wall can be considered the back wall of the cooler. Thus, the sloped part (third wall) of the bottom connects the flat part (base) to the back of the cooler (second wall). The Court discerns nothing in the proposed construction that is at odds with this basic layout.

The basis for Defendant's resistance to Plaintiff's proposed construction is not easy to ascertain from its brief, which accuses Plaintiff of inserting new limitations that are not present in the claim language. (*See, e.g.*, ECF No. 31 at 6 ("[T]here is no support for the notion that the base and third wall are planar with each other."); *id.* ("The specification is entirely silent with respect to the base and third walls being planar to each other or not.").) "Planar" is an adjective meaning "of, relating to, or in the form of a plane," *New Oxford American Dictionary* 1337 (3rd ed. 2010), and there seems to be no debate that the two parts of the bottom of the cooler each satisfy this definition. Defendant fails to provide a coherent explanation for what it means when it refers to parts of the cooler being "planar to each other" or for how Plaintiff's proposed construction misinterprets or limits this term.

Therefore, the Court finds that the term "a base and a third wall extending from the base to the second wall" is properly construed to mean "a first planar section and a second planar section of a two-section bottom wall, the first section extending from the second section to the second wall."

**C. Gradient Terms**

Claims 1 and 24 of the Patent also describe two gradients: "the third wall having a gradient with respect to the base" and "the junction having a second gradient with respect to the

base." (ECF No. 1-1 at 27, 28.)  Plaintiff's proposed construction of the first term is "the third wall is oriented at an inclination compared to the base."  (ECF No. 30 at 21.)  Its proposed construction of the second term is "the junction is oriented on an inclination compared to the base."  (*Id.*)  It argues in the alternative that the gradient terms are indefinite.  Again, Defendant's position is that they should be construed according to the plain and ordinary meaning of the words used.

Here, the Court understands "gradient" to mean that when the cooler is in a rest position, certain features or components are "sloped" or positioned at an incline as opposed to being parallel to the ground or horizontal.  In this position, the flat part of the bottom (base) and the lid can be considered parallel to the ground.  But the sloped part of the bottom (third wall) and the tow bar junction cannot be because the claims describe these features as having distinct gradients.  (ECF No. 1-1 at 22.)  Notably, when the cooler is being pulled or towed, these features become more-or-less horizontal while the base and lid no longer are.

In contrast to this straightforward interpretation, Defendant argues that the gradient terms refer to "two distinct angles connecting the side portions of the third wall to the base."  (ECF No. 31 at 8.)  But the specification says nothing about the gradients "connecting" specific parts of the cooler together.  Defendant fails to explain why the plain and ordinary meaning of the gradient terms implies such a connection.  Nor does Defendant provide a meaningful explanation as to why Plaintiff's proposed constructions are incorrect.

Therefore, the Court adopts Plaintiff's proposed constructions of the gradient terms as

7

well.

### D. Sixth Term

Finally, claims 1, 19, 20, and 24 of the '934 patent contain the term "relatively parallel." (ECF No. 1-1 at 27, 28.)  Plaintiff contends that this term is indefinite.  (ECF No. 30 at 29.) Defendant's position is that it should be construed according to the plain and ordinary meaning of these words.

The claims use "relatively parallel" to describe both the relationship between the first and second gradients discussed above and between two bars extending from the cooler that comprise part of the handle.  Plaintiff contends that a person of skill in the arts would not understand the boundaries of "relatively parallel" in these contexts, but in neither respect does the Court find this term to be indefinite.

First, where the patent contemplates that the angles of the tow bar bracket and third wall are "relatively parallel," the Court understands this to mean that the tow bar junction and the third wall are roughly in alignment, such that when the cooler is pulled with a tow bar, the tow bar junction and third wall are basically horizontal.  Plaintiff has not persuaded the Court that persons of skill in the art would not reach a similar conclusion about the meaning of this term as it is used here.  As discussed above, the patent contemplates that specific components or features of the cooler will be horizontal when it is at rest, while others will be horizontal when the cooler is being pulled or towed.

Second, where the patent contemplates that two bars of the handle are "relatively parallel," the Court understands this to mean that the bars, connected by the "interior traverse bar" (ECF No. 1-1 at 27), form part of a handle that is in the shape of an *H*, the pillars of which

8

need not be exactly parallel. Again, Plaintiff has not shown that persons of skill in the art would not reach a similar conclusion.

Therefore, the Court declines to find that the sixth term is indefinite, and it should be given its plain and ordinary meaning for the purpose of construing Defendant's claims.

## IV.    CONCLUSION

For the reasons above, the Court construes five of the disputed terms of the '934 patent as set forth in this Order and declines to find that the sixth term is indefinite.

DATED this 31st day of January, 2024.

BY THE COURT:

_____
RAYMOND P. MOORE
Senior United States District Judge